[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4108
This is an action for dissolution of marriage returnable to the Waterbury Judicial District.
The parties were married at Goshen, Connecticut on November 22, 1990. Both parties have resided in Connecticut for more than one year and the court has the requisite jurisdiction to proceed to a judgment in this action.
Having heard the evidence and testimony elicited at trial and having considered the provisions of Sections 46b-81 and46b-82, Conn. General Statutes and all other relevant statutes and rules, the court makes the following findings and orders.
The marriage of the parties has broken down irretrievably without prospect of reconciliation.
No minor children have been born which are issue of this marriage. The plaintiff does have a minor daughter which is issue of a prior marriage.
The parties lived together from the date of the marriage until August 4, 1996 when the plaintiff left the marital home.
This is the second marriage for both parties. The defendant-husband's prior marriage ended in a dissolution and the plaintiff-wife's ended by the death of her prior husband.
The plaintiff received an inheritance from her late husband as well as proceeds from his pension, insurance and from the sale of their home. Those proceeds represented a good portion of the estate of between $80,000.00 and $90,000.00 which she brought to this marriage. In one account alone the plaintiff had approximately $50,000.00 (Plaintiff's Ex. 22). After about one year, that sum had been reduced to approximately $8,000.00.
The plaintiff is 52 years old and has a high school education. She did not work outside of the home during most of the marriage. She testified that was at the insistence of the defendant who was suspicious and jealous.
In 1992 the parties purchased the current marital residence in Prospect. The parties each contributed an almost equal CT Page 4109 amount to the cash needed to close after the first mortgage. The plaintiff's contribution came from her savings and the defendant's contribution came from proceeds he received from the sale of the parties' previous residence which he owned prior to the marriage.
During the following years the parties invested considerable money and work improving and customizing that home. The money came almost exclusively from the plaintiff's funds and the labor was provided primarily by the defendant who installed or improved the electrical and plumbing features, installed windows and kitchen cabinets, a hot water heater and worked on the floors.
The defendant did this work while maintaining full time employment with The White Middlebury Partnership as a stationary engineer. His hours were from 4:00 p. m. until midnight.
The defendant's financial affidavit indicates that his gross weekly income from his primary employment is $1050.00 which nets him $650.00 per week after allowable deductions including $65.00 per week into a 401(k) plan.
He is 47 years old, has a high school education and enjoys generally good health.
The plaintiff is employed as a secretary and grosses $344.85 per week which nets her $300.75. She also receives $200.75 for the benefit of her minor daughter in the form of Social Security payments which will end when that child reaches age 18.
There are two major marital assets in this case — the equity in the marital residence amounting to approximately $40,000.00 and the defendant's 401(k) plan which he valued at $56,000.00 on his financial affidavit.
The plaintiff testified that she began to feel like "a prisoner" in the marriage due to the defendant's jealousy and lack of trust. He would not allow her to socialize with certain people including her relatives in New Jersey and repeatedly gave her the "third degree" over her routine and her relationships.
The defendant's lack of trust had its origins in admissions by the plaintiff that after the death of her first husband she had sexual relationships with other persons including an in-law. CT Page 4110 She made those disclosures to him before the parties married and testified that she had never once been unfaithful to the defendant since they were married. He insisted she not visit friends or relatives in New Jersey and he testified that she promised him that she would not, but fabricated reasons and went despite his objections.
The plaintiff testified that she has never been unfaithful to the defendant and told him. Nevertheless, he continued to scrutinize her conduct and called her late in the evening from his place of employment to check up on her.
Many gifts and personal effects were purchased for the defendant from the plaintiff's funds including a Harley-Davidson motorcycle and a Bobcat excavating machine.
The plaintiff testified that her funds were the primary source of payment for all of the improvements on the marital residence. The defendant paid the mortgage.
In 1995 the parties took out a $30,000.00 home equity loan which was used almost entirely to pay down credits cards of the defendant and to pay other debts he incurred. The testimony was that $4,000.00 or less went for obligations of the plaintiff.
In addition to his primary employment, the defendant testified that he also had a small business of his own known as Ray's Beautifying (?), which engaged in household repairs and landscaping. Many of the goods purchased by the defendant were from the same wholesalers and retailers which he patronized for goods and services related to improvements to the marital residence. There was sufficient evidence to establish that some of the charges attributed to the home were actually business related without the plaintiff's knowledge or consent. Two examples were checks written by the defendant on the parties' joint checking account. One was payable to "Jim Christiano" in the amount of $1500.00 and signed by the defendant but undated. He testified he had no idea why that check was issued. The next check in numerical sequence was to "Felix Rodriguez" in the amount of $411.81. The defendant testified he paid that to Mr. Rodriguez, an employee of Ray's, for "cutting weeds" at the marital residence. That testimony is less than credible.
The court finds that the defendant's conduct was the primary cause of the breakdown of the marriage. CT Page 4111
ORDERS
The court enters a decree that the marriage is dissolved and the parties are single and unmarried.
The court orders that the plaintiff convey all of her right, title and interest in and to the marital residence in Prospect, Connecticut to the defendant. The defendant shall be responsible for the mortgage, taxes, insurance and other expenses related to said property and shall hold the plaintiff harmless from all claims related thereto.
The defendant shall pay to the plaintiff lump sum alimony in the amount of $35,000.00 within 120 days from the date of this judgment. Payment of that sum shall be secured by an equitable lien in the plaintiff against the defendant's 401(k) plan currently in effect with his employer, The White Middlebury Partnership.
The defendant shall pay to the plaintiff periodic alimony in the amount of $150.00 per week for a period of five (5) years from the date of this judgment. That obligation shall terminate sooner upon the earliest of the following events: the death of either party, the remarriage of the plaintiff or cohabitation by the plaintiff as that term is defined by statute.
The parties shall each retain all of the other assets listed on their respective financial affidavits and shall be solely responsible for the liabilities on their affidavits except as expressly ordered otherwise herein.
The parties shall each be responsible for their own medical insurance and for their own counsel fees.
The plaintiff is restored to her prior name of Mary McGoldrick.
By The Court,
Joseph W. Doherty, Judge